OPINION
{¶ 1} Defendant-Appellant Michael Stevens appeals his convictions for robbery and aggravated burglary. For the following reasons we affirm Steven's convictions.
 {¶ 2} At about 5:00 p.m. on July 17, 2001, Gale Griffith and her two-year-old daughter returned from shopping to their home on Rosina Drive in Miamisburg. Ms. Griffith parked in the garage, got out of her car, and started to get her daughter out of her car seat. However, as she unfastened the straps of the car seat, she felt a presence behind her. After she looked down and saw unfamiliar shoes, Ms. Griffith quickly turned around and saw a man standing behind her.
 {¶ 3} The man grabbed Ms. Griffith's purse and tried to jerk it away from her. As the man continued to try to remove the purse from her shoulder, Ms. Griffith fell to the ground and was dragged across the floor before the strap broke. The man ran with her purse across her front lawn toward Gephardt Church Road.
 {¶ 4} At about the same time Sue Bowman and her two sons were stopped in their car at the intersection of Gephardt and Rosina. She noticed a small gray or silver car parked at the curb facing north on Gephardt. The car caught her attention because no one ever parked there. As she entered the intersection, Ms. Bowman saw two black people running. One came from behind a house on Rosina, while the other came across the front lawn. The two ran to the parked car, got in, and drove north on Gephardt. Ms. Bowman told her son to write down the license plate number of the car.
 {¶ 5} Ms. Bowman pulled up to talk to Ms. Griffith, who she saw walking out of her garage carrying her phone. Ms. Bowman gave Ms. Griffith the license plate number, which Ms. Griffith relayed to the "911" operator. Miamisburg police were dispatched to the scene. The dispatcher advised the officers that the suspect had fled north on Gephardt in a Ford Escort with a license plate number of CRS 5514.
 {¶ 6} Officers Tony Beran and Jeff Muncy arrived within minutes and made contact with Ms. Griffith, who was holding her elbow and was visibly shaken, very upset, and scared. Ms. Griffith explained to the officers what had happened and described the suspect as a black man, wearing a yellow shirt and dark-colored shorts. As Officer Bean talked to Ms. Griffith, he saw that she had a black scuff mark on the left shoulder of her shirt, a bruised elbow, and abrasions to her knees and the lower half of her right leg.
 {¶ 7} Meanwhile, Officers Justin Small and Steven Davis tried to find the suspect vehicle. After searching unsuccessfully for about thirty minutes, the dispatcher advised them that there had been a report of a reckless vehicle on South Heincke Road, which had pulled into the parking lot of Wendy's. Officers Small and Davis responded to that location and found a silver Escort with the same license plate number that had been provided in the original dispatch. Lying in the grass about ten feet from the car was a black leather purse with a broken strap. Officer Davis and Officer Muncy, who had since arrived at Wendy's, processed the car for fingerprints.
 {¶ 8} The car was registered to Mark Grasco. On July 13 or 14, 2001, while in the parking lot of the Plaza Motel in Dayton, Grasco loaned his 1989 Ford Escort to a man in exchange for crack cocaine. The man never returned the car.
 {¶ 9} The latent fingerprints taken from the car were later examined and determined to be the right index finger, left middle finger, and left palm print of Stevens. Having identified a possible suspect, Detective Jeff Crumbley showed Ms. Griffith a photo spread that included Stevens. She quickly chose Stevens as the man who had stolen her purse. Det. Crumbley showed Grasco the same photo spread, and Grasco identified Stevens as the man to whom he had loaned his car.
 {¶ 10} Stevens was indicted on one count of aggravated burglary and one count of robbery. Prior to trial he filed a motion in limine seeking to keep certain evidence from the jury. The trial court agreed that evidence of Stevens' daily drug use would not be allowed, but held that evidence of his statements to Det. Crumbley that he has a very poor memory would be admissible.
 {¶ 11} Following a jury trial, Stevens was found guilty as charged. The trial court merged the two counts and sentenced him to a term of nine years in prison. Stevens filed a timely notice of appeal.
 {¶ 12} Stevens' first assignment of error:
 {¶ 13} "Appellant's conviction is against the manifest weight of the evidence."
 {¶ 14} In claiming that his convictions were against the manifest weight of the evidence, Stevens presents five arguments challenging the reliability of Ms. Griffith's identification of him as the perpetrator of the crimes. After a careful review of all of the evidence, we find that Stevens' convictions were not against the manifest weight of the evidence.
 {¶ 15} When conducting a manifest weight analysis, an appellate court "`review[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 16} Stevens does not deny that Ms. Griffith was the victim of a crime. Instead, he challenges the reliability of her identification of him as the one who stole her purse. Factors to be considered in determining the reliability of identification testimony include: (1) the opportunity of the witness to view the suspect at the time of the crime; (2) the degree of attention paid by the witness; (3) the accuracy of his prior description of the suspect; (4) the level of certainty of his identification; and (5) the length of time between the crime and the identification. State v. Moody (1978), 55 Ohio St.2d 64, 67,377 N.E.2d 1008, citing Neil v. Biggers (1972), 409 U.S. 188, 199,93 S.Ct. 375. Stevens challenges each of these factors.
 {¶ 17} Ms. Griffith had ample opportunity to view Stevens at the time of the crime. When Ms. Griffith first saw Stevens, he was only a couple of feet away from her. She had a clear view of his face for several seconds before he grabbed her purse causing her to fall to the ground. She continued to observe Stevens for between 45 seconds and one minute as he dragged her across the floor. Moreover, Ms. Griffith made a conscious decision to concentrate on Stevens' face so that she could identify him later.
 {¶ 18} Although Ms. Griffith was understandably upset on the day of the crime, she gave Det. Crumbley a fairly detailed description of her assailant the following day. She described him as a black male with a wide nose and closed, pursed lips. She said that he was 5'9" to 6'3" tall and weighed between 150-200 pounds, with a muscular build. He was wearing a yellow tank top, off-yellow shorts with a pastel floral pattern, white tennis shoes, white socks, and a yellow do-rag on his head. Stevens makes much of the fact that Ms. Griffith failed to describe any scars on her assailant while he has noticeable scars on his face and arm. As the State correctly notes, however, there is no evidence as to whether Stevens had those scars on July 17, 2001. In any event, a scar on Stevens' forehead would not have been visible because he was wearing a do-rag on that day. Additionally, since Ms. Griffith was focused on Stevens' face, she may not have noticed a scar on his arm. The jurors, as the finders-of-fact, were in the best position to determine the accuracy of Ms. Griffith's description of Stevens as compared to his appearance at trial.
 {¶ 19} After Stevens' fingerprints were found on the get-away car, Det. Crumbley prepared a photo spread that included Stevens. The detective showed Ms. Griffith the photo spread in her home on December 26, 2001. Despite the lapse of five months since the crime, within a matter of seconds, Ms. Griffith identified Stevens as the man who stole her purse. She was quite certain of her identification. Moreover, there is no evidence that her identification was in any way influenced by Det. Crumbley.
 {¶ 20} Furthermore, Ms. Griffith's identification of Stevens was supported by the presence of Stevens' fingerprints on the get-away car, the fact that her purse was found near the car, and by the testimony of Mark Grasco and Sue Bowman. The combination of all of the State's evidence proved beyond a reasonable doubt that Stevens was the man who stole Ms. Griffith's purse.
 {¶ 21} Accordingly, Stevens' convictions for aggravated burglary and robbery were not against the manifest weight of the evidence. Because this is not one of those exceptional cases in which the evidence weighs heavily against conviction, Stevens' first assignment of error is without merit and is overruled.
 {¶ 22} Stevens' second assignment of error:
 {¶ 23} "The trial court erred in overruling appellant's motion in limine."
 {¶ 24} Here Stevens argues that although the trial court properly excluded evidence of his drug use, the court committed reversible error by allowing the State to introduce evidence of his poor memory. We disagree.
 {¶ 25} The admission of evidence generally rests within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. State v. Myers, 97 Ohio St.3d 335,2002-Ohio-6658, ¶ 75, citing State v. Maurer (1984), 15 Ohio St.3d 239,265, 473 N.E.2d 768. "An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable." Myers, supra, citing Statev. Adams (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144.
 {¶ 26} "A motion in limine is a request that the court limit or exclude use of evidence which the movant believes to be improper, and is made . . . usually prior to trial. The motion asks the court to exclude the evidence unless and until the court is first shown that the material is relevant and proper. If the court denies the motion, no reviewable error results unless the proponent of the evidence later offers it at trial, the opponent then objects, and the court erroneously overrules that objection, or the mere asking of the question creates unfair prejudice." State v. Winston (1991), 71 Ohio App.3d 154, 158,593 N.E.2d 308, citation omitted.
 {¶ 27} In this case Stevens made a liminal motion to exclude evidence of has daily use of marijuana and his poor memory. The trial court excluded evidence of the drug use, but allowed evidence of his bad memory. Evidence of Stevens' poor memory was relevant and proper under the facts of this case. The jury was entitled to evaluate the credibility of Stevens' claim that he did not remember if he was involved in the incident. This was particularly important when Stevens proceeded to give two incompatible versions of his story during his interview with Det. Crumbley.
 {¶ 28} However, when this testimony was offered at trial, Stevens failed to object. Therefore, there is no error for this court to review unless the question itself created unfair prejudice. Id. Such is not the case here. Because Stevens' bad memory was not linked to his drug use, the potential for prejudice was minimal. Since the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice, the trial court's admission of the evidence was proper.
 {¶ 29} Accordingly, Stevens' second assignment of error is overruled.
 {¶ 30} Stevens' third assignment of error:
 {¶ 31} "Appellant was denied his constitutional right to effective assistance of counsel."
 {¶ 32} Stevens claims that he was denied the effective assistance of trial counsel because counsel failed to object to several statements by the prosecutor during opening statement and closing argument. Because the statements of which Stevens complains were supported by the evidence presented at trial, we cannot find counsel to have been ineffective for choosing not to object to them.
 {¶ 33} In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's representation fell below an objective standard of reasonableness and that, but for counsel's errors, the result of the proceeding would have been different.Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052; State v.Bradley (1989), 42 Ohio St.3d 136, 142, 538 N.E.2d 373. Trial counsel is entitled to a strong presumption of reasonableness, and the adequacy of his performance must be reviewed in light of all of the circumstances surrounding the trial. Strickland, supra. Hindsight cannot be allowed to distort the assessment of what was reasonable in light of counsel's perspective at trial. State v. Cook (1992), 65 Ohio St.3d 516, 524,605 N.E.2d 70.
 {¶ 34} Generally, prosecutors are entitled to considerable latitude in opening statement and closing argument. State v. Ballew,76 Ohio St.3d 244, 255, 1996-Ohio-81. In closing argument a prosecutor may comment freely on "what the evidence has shown and what reasonable inferences may be drawn therefrom." State v. Lott (1990),51 Ohio St.3d 160, 165, 555 N.E.2d 293, quoting State v. Stephens
(1970), 24 Ohio St.2d 76, 82, 263 N.E.2d 773. Moreover, because isolated instances of prosecutorial misconduct are harmless, the closing argument must be viewed in its entirety to determine whether the defendant has been prejudiced. Ballew, supra; State v. Lorraine (1993),66 Ohio St.3d 414, 420, 613 N.E.2d 212.
 {¶ 35} Stevens first claims that trial counsel was ineffective for failing to object to the prosecutor's characterization of the car as abandoned in both opening statement and closing argument. While it is true that the prosecutor did so characterize the car, we fail to see how this would constitute prosecutorial misconduct. To the contrary, it was reasonable to infer from the evidence presented that the car was abandoned, and there was no reason for counsel to object.
 {¶ 36} Stevens also insists that the prosecutor inaccurately stated that he was in the house, when he was really in the garage. Once again, the prosecutor did state on one occasion that Stevens was in Ms. Griffith's house, but every other time, he stated that Stevens was in the garage. It appears that this was simply a misstatement. In any event, we have held that an attached garage is part of the home. See, e.g., Statev. Davis (Dec. 8, 2000), Clark App. No. 2000-CA-16. Thus, there was no reason for defense counsel to object to the prosecutor's single mention of Stevens being in Ms. Griffith's home.
 {¶ 37} Stevens next argues that counsel should have objected to the prosecutor's statement that Ms. Griffith saw Stevens' face for a minute because it was not supported by the evidence. However, the testimony reveals that Ms. Griffith not only saw Stevens' face when she first turned around, but she was still able to see his face as he dragged her across the floor after she fell. Therefore, she was able to observe him throughout the whole incident, which took between 45 and 60 seconds. Accordingly, the statement accurately reflected the evidence presented and warranted no objection.
 {¶ 38} Finally, Stevens claims that counsel should have objected to the prosecutor's statements about Stevens pretending to have a bad memory. Because the court did not allow testimony about Stevens' drug usage, we cannot agree that the prosecutor's statements would have automatically led the jury to believe that his memory was affected by drug use. Instead, these comments were justified by the testimony of Det. Crumbley of his interview of Stevens, and no objection was necessary.
 {¶ 39} Because the prosecutor's statements accurately reflected the evidence presented at trial, there was no reason for defense counsel to object, and Stevens was not denied the effective assistance of trial counsel. Stevens' third assignment of error is overruled.
 {¶ 40} Stevens' fourth assignment of error:
 {¶ 41} "Appellant was denied his constitutional right to a fair trial through prosecutorial miscondcut."
 {¶ 42} Finally, Stevens argues that he was denied a fair trial due to three instances of prosecutorial misconduct. After a careful review of the entire record, however, we conclude that Stevens was not denied a fair trial.
 {¶ 43} In reviewing a claim of prosecutorial misconduct, we must consider "whether the remarks were improper, and if so, whether they prejudicially affected substantial rights of the defendant." State v.Smith (1984), 14 Ohio St.3d 13, 14, 470 N.E.2d 883. Prejudice is not demonstrated where it is clear beyond a reasonable doubt that, absent the prosecutor's conduct, the jury still would have found the defendant guilty. State v. Loza (1994), 71 Ohio St.3d 61, 78, 641 N.E.2d 1082.
 {¶ 44} First, Stevens claims that the prosecutor committed misconduct when he called Stevens a "fucking asshole." Clearly, this name-calling was unprofessional and unacceptable.[1] However, the test for prosecutorial misconduct focuses on "the fairness of the trial, not the culpability of the prosecutor." State v. Noling, 98 Ohio St.3d 44,2002-Ohio-7044, ¶ 91. Because the comment was made outside of the jury's presence, Stevens cannot show how he was prejudiced by it. Consequently, it is clear beyond a reasonable doubt that but for the prosecutor's comment, the outcome of the trial would not have been different.
 {¶ 45} Next, Stevens argues that misconduct occurred when the prosecutor pointed at him during opening statement. It appears that the prosecutor did point at Stevens as he said that Ms. Griffith "turns around and comes almost face to face with that man." However, this merely illustrated to the jury what the prosecutor expected the evidence to show, namely that Ms. Griffith identified Stevens as the man who snuck up behind her in her garage and stole her purse. Accordingly, the trial court properly overruled trial counsel's objection. The prosecutor did not commit misconduct by gesturing during opening statement.
 {¶ 46} Finally, Stevens insists that the prosecutor commented on his failure to testify when he stated, "And if you don't like the fact that we had to call [Mark Grasco] as a witness. Don't blame us because there is only one individual in this case, who had the power to choose the witnesses and that was the defendant." However, we agree with the State that the prosecutor was not commenting in any way on Stevens' failure to testify. Instead, he was merely trying to remove the emphasis on Grasco's unsavory character by pointing out that the events surrounding Stevens' crimes chose the witnesses, not the State. See,Noling, supra, at ¶ 93.
 {¶ 47} Because no prosecutorial misconduct occurred, Stevens' fourth assignment of error is without merit and is overruled.
 {¶ 48} Having overruled all four of Stevens' assignments of error, the judgment of the trial court is Affirmed.
FAIN, P.J. and GRADY, J., concur.
[1] We understand that the attorney concerned is no longer on the staff of the Montgomery County Prosecutor's office.