OPINION
{¶ 1} Steven Warner is appealing the judgment of the Greene County Court of Common Pleas finding him guilty on three counts of receiving stolen property and one count of bribery, and sentencing him accordingly.
 {¶ 2} On September 12, 2002, Warner was indicted on three counts of receiving stolen property in violation of R.C.2913.51(A). He was indicted on October 31, 2002, under a separate case number, on one count of bribery in violation of R.C.2921.02(C), and one count of burglary in violation of R.C.2911.12(A)(2).
 {¶ 3} A jury trial was held on all charges on March 21, 2003 and April 1, 2003. The following evidence was adduced at trial.
 {¶ 4} On August 6, 2002, Kimberly Warner,[1] Warner's sister, contacted the Fairborn Police Department to report a theft of $200 from her purse. She believed that Warner had committed the theft at her home the previous night while visiting her.
 {¶ 5} Bonnie Shipley contacted the Fairborn Police Department on August 25, 2002, reporting that she had been awakened that morning by the loud noise of a car leaving her house. She immediately arose from the couch on which she was sleeping and discovered that her purse was missing. She suspected that Warner, the father of her grandson, had taken her purse, because the noise that awoke her had sounded distinctively like the loud muffler on Warner's blue Pontiac Sunbird. She also noticed that the screen door to her front door was ajar, and Warner was aware that the lock on the front door had been broken.
 {¶ 6} Shipley's neighbor, Keith Wooster, testified that at approximately 7 a.m. on August 25, 2002, he heard the familiar sound of Warner's muffler as the Sunbird proceeded down his street. Wooster looked out his window and saw Warner's vehicle parked in Shipley's driveway.
 {¶ 7} The third victim, David Hofferbert, contacted the Fairborn Police Department on August 29, 2002 to report a missing DVD player. He, too, suspected that Warner had committed the theft. Incidentally, Hofferbert confronted Warner, and the DVD player reappeared several days later in Hofferbert's garage. Later in the investigation, it was brought to Hofferbert's attention that checks had been stolen from his home.
 {¶ 8} Jerry Runyon, a friend of Warner, arrived at the Fairborn Police Department on August 28, 2002 with a plastic bag. The bag contained a canvas bag and a locked box which Runyon claimed Warner had brought to his house several days ago. Detective Lee Cyr opened the bag and recognized a black purse which matched the description of the purse stolen from Shipley. He quickly stopped the investigation to obtain a search warrant.
 {¶ 9} After the search warrant was obtained, Det. Cyr confirmed that the purse in the bag was Shipley's. He also discovered checks belonging to Kimberly Warner and Hofferbert. Because neither Kimberly nor Hofferbert were aware that their checks had been taken without their consent, it was not possible to pinpoint a specific date on which the theft had occurred. As a result of this investigation, Warner was arrested on charges of receiving stolen property.
 {¶ 10} In October of 2002, Runyon brought three letters to Det. Cyr. Runyon explained that the letters had been delivered by Sharon Warner, Warner's mother, and had been written by Warner while incarcerated. The letters attempted to bribe Runyon into changing his testimony. As a result, Warner was indicted on one count of bribery and one count of burglary.
 {¶ 11} During the trial, the trial court granted Warner's motion for a directed verdict of not guilty on the burglary charge. The jury found Warner guilty on all three counts of receiving stolen property and on the one count of bribery. Warner was sentenced to four years incarceration on the bribery conviction, and eleven months incarceration on each of the receiving stolen property convictions, all to be served consecutively for a total of six years and nine months.
 {¶ 12} Warner now appeals his convictions and sentences, asserting seven assignments of error.
 {¶ 13} Warner's first assignment of error:
 {¶ 14} "Appellant was denied his constitutional right to effective assistance of counsel as guaranteed by the Sixth andFourteenth Amendments of the United States Constitution and by Article I of the Ohio Constitution because trial counsel failed to request a handwriting expert witness."
 {¶ 15} Preliminarily, we note that in order to demonstrate ineffective assistance of counsel, Warner must establish that his counsel's representation fell below an objective standard of reasonableness and that he has been prejudiced by his counsel's deficient performance, i.e., that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. Strickland v. Washington
(1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v.Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. See Strickland,466 U.S. at 689. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. See id.; State v. Parker, Montgomery App. No. 19486, 2003-Ohio-4326, ¶ 13.
 {¶ 16} Warner asserts error in trial counsel's failure to call a handwriting expert to exclude him from authorship of the letters introduced as evidence of bribery. Furthermore, Warner states that since his trial, he has obtained the services of a handwriting examiner, and that the examiner has concluded that Warner did not write the letters presented by Runyon. According to Warner, but for the admission of the letters, he would not have been convicted of bribery.
 {¶ 17} A trial court has broad discretion in admitting evidence, and an appellate court will not reverse absent a clear demonstration of abuse of that discretion. State v. Long
(1978), 53 Ohio St.2d 91, 372 N.E.2d 804; State v. Hymore
(1967), 9 Ohio St.2d 122, 224 N.E.2d 126. In cases such as this, "[f]oundational evidence as to distinctive contents, taken in conjunction with the circumstances, is permissible under Evidence. R. 901(B)(4)." State v. Gumpl (April 24, 1985), Summit App. Nos. 11853, 11861.
 {¶ 18} We disagree with Warner's argument that the only way to authenticate the letters was to subject them to a handwriting analysis to confirm authorship. In this case, we find that the contents of the letters provide circumstantial evidence of their authorship. Runyon demonstrated substantial knowledge of the contents of the letters, and he made numerous connections between Warner and the specific references contained within the letters.
 {¶ 19} The letters make multiple references to Warner's incarceration status, the upcoming trial, and "facts" that Runyon needed to make known before Warner's attorney, the judge, and the prosecutor. Warner referred to his friendship with Runyon several times in each letter and requested that Runyon not disclose to anyone that Warner had been contacting him. The letters were signed by Warner and delivered to Runyon via Warner's mother, Sharon Warner.
 {¶ 20} Throughout the letters, Warner made repeated references to Runyon's sister, Bonnie Luis. In one such reference, Warner wrote, "your sister has put me in a difficult spot here in jail." Runyon explained that Luis was partially responsible for Warner's arrest, as Luis had instructed Runyon to place all of Warner's items into a plastic bag, and Luis drove Runyon and the items to the Fairborn Police Department.
 {¶ 21} Runyon also explains that the references in the letters to his father's will was a topic of conversation about which he had spoken with Warner many times. Warner was aware that Runyon thought his father had left a will and had been searching for one since his father's passing several years ago. Runyon had asked Warner to help him locate the will. In the letters, Warner claims to have "discovered" the will on a computer while in jail. Warner wrote that he would share the information about the will after his release from jail, and at that point he could help Runyon obtain his $500,000 inheritance. Warner told Runyon that he would not give him more information until after Runyon told the judge and the prosecutor what Warner wished him to say.
 {¶ 22} Our review of the letters convinces us that even had an objection been made, the court would not have abused its discretion by finding that the letters met the threshold level of authenticity needed to admit them into evidence. They referenced too many facts to survive the argument that they could not be inferred to be authentic. As such, we fail to see that Warner fell victim to ineffective assistance of counsel due to trial counsel's failure to object to the admission of these documents, as such did not prejudice Warner and the outcome of trial would not have been different.
 {¶ 23} In this assignment of error Warner also contends that he obtained the services of Carl Reeder, A.C.P., M.E.P., a forensic documentation examiner, who "concluded" that Warner did not write the three letters presented by Runyon. We cannot predict what the expert would say during direct and cross-examination, and establishing such would require proof outside the record, which is not appropriately considered on appeal. State v. Hartman, 93 Ohio St.3d 274, 299,2001-Ohio-1580, 754 N.E.2d 1150. For this reason, we will not consider this claim on appeal.
 {¶ 24} Accordingly, Warner's first assignment of error is overruled.
 {¶ 25} Warner's second assignment of error:
 {¶ 26} "Appellant was denied his constitutional right to effective assistance of counsel as guaranteed by the Sixth andFourteenth Amendments of the United States Constitution and by Article I of the Ohio Constitution because trial counsel failed to timely object to testimony regarding State's exhibits."
 {¶ 27} Warner finds error in trial counsel's failure to object to two of the State's exhibits during the course of the trial. The first exhibit is Warner's notification from Fairborn Municipal Court of an upcoming pretrial on an unrelated matter. Warner asserts that Det. Cyr had testified twice on direct-examination that the notification had been found in the locked box, not in the bag. However, upon cross-examination, Det. Cyr stated that the notification had actually been discovered in the bag. At trial, counsel objected to the contents of the notification, not the testimony regarding the location of its discovery. Warner claims that he was prejudiced by counsel's failure to object to Det. Cyr's testimony of the location of the notification, as the misstatement of its discovery in the locked box would infer Warner's ownership of the locked box.
 {¶ 28} We note that trial counsel did object to the notification being admitted as evidence at the close of the State's case in chief, and the exhibit was not admitted. We further note that Warner's trial counsel was able to cross-examine Det. Cyr regarding the notification and its location, and that it was during cross-examination, in the presence of the jury, that Det. Cyr corrected his error and stated that the notification had been found in the bag, not in the locked box.
 {¶ 29} We find no evidence that the outcome at trial would have been different had counsel objected specifically to the location of the notification. It was reasonable trial strategy for trial counsel to listen to the testimony on direct-examination and "correct" the mistake on cross-examination in the presence of the jury. Accordingly, we cannot find that the testimony surrounding the notification's location was prejudicial to Warner, and thus trial counsel's failure to object did not amount to ineffective assistance of counsel.
 {¶ 30} Warner also argues that he was prejudiced by trial counsel's failure to object to Exhibit 20, Hofferbert's check written out to Mary Runyon that was found in the locked box. To the best of our understanding, Warner is asserting that trial counsel failed to adequately cross-examine Det. Cyr about how he obtained this piece of evidence.
 {¶ 31} We note that trial counsel did object to the check's introduction into evidence on grounds that it was not a "blank check" of which Warner was charged with receiving. The State replied that the check had been blank at the time it had been stolen, and that evidence would be presented that Warner had possessed the check and had exercised control over it, thus it was relevant and not unfairly prejudicial. The trial court overruled the objection. Later in the trial, Mary Runyon testified that Warner had picked her up and transported her to her bank so that she could cash the check in question for him.
 {¶ 32} Because of this, we find that defense counsel's failure to object further to the check's admission did not amount to ineffective assistance of counsel. The exhibit was relevant; its admission did not unfairly prejudice Warner; and even had trial counsel objected, the result of trial would not have been different.
 {¶ 33} Warner's second assignment of error is overruled.
 {¶ 34} Warner's third assignment of error:
 {¶ 35} "Appellant was denied his constitutional right to effective assistance of counsel as guaranteed by the Sixth andFourteenth Amendments of the United States Constitution and by Article I of the Ohio Constitution because trial counsel failed to timely object to irrelevant statements."
 {¶ 36} Warner asserts several instances where trial counsel's failure to object to "irrelevant questioning" on behalf of the State resulted in ineffective assistance of counsel. First, Warner claims that Kimberly Warner's recognition of the handwriting on one of her checks as being Warner's handwriting was irrelevant to prove receiving stolen property. Warner claims this testimony was prejudicial and irrelevant. Additionally, Kimberly's testimony that her housemate's wallet was stolen on the same night as the money was taken from her purse was irrelevant and prejudicial, as no charges were pending regarding this allegation.
 {¶ 37} Warner also argues that a good portion of Dave Hofferbert's testimony was irrelevant and unfairly prejudicial. Specifically, Hofferbert stated that his DVD player and some blank checks had been stolen and that he believed that Warner had been responsible. Again, Warner contends that trial counsel was ineffective because none of the pending charges dealt with Warner allegedly stealing a DVD player nor Hofferbert's checks.
 {¶ 38} Finally, Warner contends that Bonnie Shipley's belief that Warner had stolen her purse, despite not seeing him in her house that morning nor seeing him actually with the purse, was irrelevant and prejudicial.
 {¶ 39} In this case, Warner was indicted for receiving stolen property, namely blank checks belonging to Kim Warner and Hofferbert, and Shipley's credit cards. To be convicted of this offense pursuant to R.C. 2913.51, the state must prove that Warner "receive[d], retaine[d] or dispose[d] of property of another knowing or having reasonable cause to believe that the property ha[d] been obtained through commission of a theft offense." Therefore, it follows that testimony was relevant to the possession of the items alleged to have been stolen and eventually found to be under Warner's control, as this evidence would go to prove Warner's knowledge that the checks and credit cards were "property of another." Id.
 {¶ 40} While it may have been error for Warner's counsel to fail to object to the witnesses' testimony that they believed that Warner had stolen the items such as Kimberly's cash, Hofferbert's DVD player, and Shipley's purse, the testimony was brief, was not the focus of the questions asked, and none of the witnesses specifically concluded that Warner had committed the thefts. To the contrary, upon cross-examination by defense counsel, all three witnesses testified that they had not seen the items in question in Warner's possession nor had they seen him take them. Furthermore, Kimberly's testimony that her roommate's wallet had been stolen the same night her purse was stolen was irrelevant, but we see no prejudice as a result of this remark.
 {¶ 41} Based upon the above discussion, we do not find but for counsel's failure to object to the testimony, the result of the proceeding would have been different. Accordingly, Warner was not denied effective assistance of counsel.
 {¶ 42} Warner's third assignment of error is overruled.
 {¶ 43} Warner's fourth assignment of error:
 {¶ 44} "Appellant was denied his constitutional right to effective assistance of counsel as guaranteed by the Sixth andFourteenth Amendments of the United States Constitution and by Article I of the Ohio Constitution because trial counsel failed to timely object to opposing counsel's prejudicial closing rebuttal statements."
 {¶ 45} Warner claims that his trial counsel rendered ineffective assistance by failing to object to misstatements of evidence during the State's closing argument. Warner also claims that the State engaged in prosecutorial misconduct by "improperly referr[ing]" to Warner's right to remain silent in his closing argument.
 {¶ 46} In analyzing claims of prosecutorial misconduct, the test is "whether remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused." Statev. Jones, 90 Ohio St.3d 403, 420, 2000-Ohio-187, 749 N.E.2d 300, citing State v. Smith (1984), 14 Ohio St.3d 13, 14,470 N.E.2d 883. "The touchstone of analysis `is the fairness of the trial, not the culpability of the prosecutor.'" Id., quoting Smith v.Phillips (1982), 455 U.S. 209, 219, 102 S.Ct. 940,71 L.Ed.2d 78. Where it is clear beyond a reasonable doubt that a jury would have found the defendant guilty even absent the alleged misconduct, the defendant has not been prejudiced, and his conviction will not be reversed. See State v. Loza (1994),71 Ohio St.3d 61, 78, 1994-Ohio-409, 641 N.E.2d 1082. In reviewing allegations of prosecutorial misconduct, we review the alleged wrongful conduct in the context of the entire trial. Darden v.Wainwright (1986), 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144.
 {¶ 47} Generally, prosecutors are entitled to considerable latitude in opening statement and closing argument. State v.Ballew, 76 Ohio St.3d 244, 255, 1996-Ohio-81, 667 N.E.2d 369;State v. Stevens, Montgomery App. No. 19572, 2003-Ohio-6249, ¶ 34. In closing argument, a prosecutor may comment freely on "what the evidence has shown and what reasonable inferences may be drawn therefrom." State v. Lott (1990), 51 Ohio St.3d 160, 165,555 N.E.2d 293, quoting State v. Stephens (1970),24 Ohio St.2d 76, 82, 263 N.E.2d 773. "Moreover, because isolated instances of prosecutorial misconduct are harmless, the closing argument must be viewed in its entirety to determine whether the defendant has been prejudiced." Stevens, supra, citing Ballew, supra, andState v. Lorraine (1993), 66 Ohio St.3d 414, 420,613 N.E.2d 212.
 {¶ 48} Warner first claims error in trial counsel's failure to object to a statement in the prosecutor's rebuttal closing argument, during which he misstated that Hofferbert had testified that he had owed Warner money.
 {¶ 49} Despite the prosecutor's statement, a review of the record reveals that Hofferbert testified that Warner had not loaned him money. Regardless of whether the prosecutor misstated the facts or whether there was a typographical error in the transcript, this statement was brief and did not focus on a core issue in the case. Furthermore, the trial court told the jury that closing arguments were not evidence, and, viewing the closing argument as a whole, the isolated misstatement did not prejudice Warner. We thus find no misconduct based on the prosecutor's misstatement.
 {¶ 50} Warner also asserts that the prosecutor made an improper reference to Warner's right to remain silent. During his rebuttal, the prosecutor stated that "there was only one witness for the Defense. There is only one witness that testified on behalf of the Defense." Warner claims that this statement was a direct attack on Warner's exercise of his right to remain silent, and that Warner had no duty to call witnesses on his behalf at trial. By not objecting to these statements, he suffered from ineffective assistance of counsel.
 {¶ 51} We disagree. While we do view the comment to be somewhat improper, as it first appears to refer to the amount of witnesses called by Warner, the comment must be considered in context. The statement in its entirety reads "there was only one witness for the Defense. There is only one witness that testified on behalf of the Defense. The State presented several witnesses, but you have to assess the credibility of each of those witnesses." (Tr. 410) At that point, the State launched into the credibility issues surrounding its own witnesses, and nothing more was said about Warner's witness or lack of other witnesses.
 {¶ 52} We agree with the State that this situation is similar to that in State v. Stith (June 11, 1996), Franklin App. No. 95APA07-934. The court in that instance noted "With respect to defendant's contention that the prosecution made improper comments upon the number of witnesses called by the defense, our review of the transcript indicates that the prosecutor was simply asking the jury to focus on the substance of each witnesses' testimony rather than the sheer number of witnesses presented. We find nothing improper in such an argument." In viewing the closing argument in its entirety, we do not find any prejudice to Warner and thus we find that counsel did not provide ineffective assistance.
 {¶ 53} We find no merit in Warner's fourth assignment of error.
 {¶ 54} Warner's fifth assignment of error:
 {¶ 55} "The trial judge erred by failing to grant Appellant's pro se motion to remove his counsel for failure to communicate prior to trial."
 {¶ 56} Warner contends that he received ineffective assistance of counsel prior to trial, and he argues that it was error for the trial court to deny his motion to have trial counsel withdrawn. Specifically, Warner argues that counsel failed to adequately communicate with him and failed to provide him with continuing discovery.
 {¶ 57} We disagree. "[W]hile the right to select and be represented by one's preferred attorney is comprehended by theSixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate * * * rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Wheat v. United States (1988), 486 U.S. 153, 159,108 S.Ct. 1692, 100 L.Ed.2d 140. State v. Jones, 91 Ohio St.3d 335,2001-Ohio-57, 744 N.E.2d 1163. Thus, "[a] defendant has only apresumptive right to employ his own chosen counsel." State v.Keenan, 81 Ohio St.3d 133, 137, 689 N.E.2d 929, 1998-Ohio-459. Additionally, an accused's right to counsel of his choice must be balanced with "the public's interest in the prompt and efficient administration of justice." State v. Pruitt (1984),18 Ohio App.3d 50, 57, 480 N.E.2d 499.
 {¶ 58} Thus, a defendant's right to replacement counsel is not absolute and must be balanced against legitimate administrative concerns, among others. State v. Marinchek
(1983), 9 Ohio App.3d 22, 23-24, 457 N.E.2d 1198. Hence, the decision to appoint new counsel rests within the sound discretion of the trial court. State v. Dukes (1986), 34 Ohio App.3d 263,518 N.E.2d 28. An appellate court will not reverse the trial court's decision absent an abuse of discretion. Id. The term "abuse of discretion" implies that the trial court's ruling was "unreasonable, arbitrary, or unconscionable." State v. Adams
(1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144.
 {¶ 59} Further, "[t]he right to competent counsel does not require that a criminal defendant develop and share a `meaningful relationship' with his attorney." State v. Blankenship (1995),102 Ohio App.3d 534, 558, 657 N.E.2d 559. "[A]n indigent defendant is entitled to the appointment of substitute counsel only upon a showing of good cause, such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict which leads to an apparently unjust result." Id., citing Pruitt, supra, at 57.
 {¶ 60} Here, the record contains no evidence indicating that any such circumstances existed in this case. A hearing was held on Warner's motion, during which the trial court inquired at length into Warner's dissatisfaction with his trial counsel. The evidence at the hearing on the motion supported the trial court's findings that there was not a complete breakdown of communication.
 {¶ 61} Warner claims that he was disconnected several times during attempts to establish telephone contact with Anthony Sullivan, his trial counsel. In fact, Sullivan stated on the record that it was his office policy to accept any collect calls unless the person does not provide their name, and that there had been a string of collect calls from a caller who refused to provide his name. Warner also claims that Sullivan failed to provide him with the second discovery packet. The trial court addressed the delay and explained to Warner that Sullivan had other clients, and that Warner would have to understand that attorneys "try to accommodate all of their clients in a timely manner, but it can't always be as timely as perhaps you would like." Finally, Warner mentioned to the trial court that he had an alibi, but that Sullivan never "addressed" it with him. The trial court then continued the trial to allow Warner and Sullivan time to talk and strategize.
 {¶ 62} We find that the trial court in this instance did not abuse its discretion when it concluded that there was not a total lack of communication between Warner and Sullivan. Although the record shows that Warner was unhappy with Sullivan, the majority of his complaints arose out of the communications between them, not from a total lack of communication. The trial court adequately inquired into and addressed Warner's concerns regarding defense counsel prior to the start of trial. As a result of this inquiry, the trial court postponed the trial to allow Warner and Sullivan sufficient time to prepare. Prior to and during the rescheduled trial, the record indicates that defense counsel subpoenaed and interviewed witnesses, reviewed the case with Warner, reviewed police reports, and filed motions. Therefore, we find no abuse of discretion in the trial court's denial of Warner's motion for new counsel.
 {¶ 63} Warner's sixth assignment of error:
 {¶ 64} "The trial judge abused his discretion by allowing in testimony relating to filled in checks."
 {¶ 65} Warner asserts that the trial court abused its discretion in overruling defense counsel's objections to the testimony that Warner had filled in the blank checks, as this was no indication of the charge of receiving stolen property.
 {¶ 66} We disagree. Warner was charged with receiving stolen property, in violation of R.C. 2913.51, which states, "[n]o person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." This case presents a similar issue to that in State v. Turner (Feb. 21, 1992), Ross App. No. 1745. In Turner, the defendant claimed that she "exhibited insufficient dominion and control over the checks to be convicted of receiving stolen property[,]" because she "merely wrote on them while another person held them on the armrest of the vehicle." Id. The appellate court found that under R.C. 2913.51, possession of stolen property "may be constructive as well as actual. Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." Id, quoting State v. Hankerson (1982),70 Ohio St.2d 87, 434 N.E.2d 1362. The court found that the defendant's action of writing on the checks constituted "constructive possession of the stolen checks. By writing on the checks, appellant clearly exercised dominion and control over the checks. Indeed, writing on checks is the sole method for exhibiting the ultimate dominion and control over them." Id.
 {¶ 67} In this case, the testimony relating to Warner's writing on the checks was necessary to establish his dominion and control over the checks, thus demonstrating that he had constructive possession of the stolen checks. Accordingly, we find no abuse of discretion on behalf of the trial court, as this testimony was necessary to prove a key element of receiving stolen property.
 {¶ 68} Warner's sixth assignment of error is overruled.
 {¶ 69} Warner's seventh assignment of error:
 {¶ 70} "The trial court erred in upholding Appellants { sic} convictions because they were against the manifest weight of the evidence."
 {¶ 71} Warner claims that his three convictions for receiving stolen property were against the manifest weight of the evidence.
 {¶ 72} When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, citingState v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717. Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288, unreported. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. Martin, supra, at 175.
 {¶ 73} Warner asserts that his three convictions for receiving stolen property were against the manifest weight of the evidence. As we previously stated, in order to find Warner guilty of receiving stolen property, the jury must find, beyond a reasonable doubt, that he received, retained, or disposed of the property of another, while knowing or having reasonable cause to know that the property was obtained through the commission of a theft offense. R.C. 2913.51(A). As we stated in the previous assignment of error, in order to receive or retain property for purposes of R.C. 2913.51(A), one must have either actual or constructive possession of the stolen property. Hankerson, supra, at 91; In re Lame (Sept. 25, 1998), Portage App. Nos. 96-P-0265, 96-P-0266, and 96-P-0267. Constructive possession exists when an individual has dominion or control over the property, regardless of whether that property is within his actual possession. Hankerson, supra, at 91; State v. Wolery
(1976), 46 Ohio St.2d 316, 329, 348 N.E.2d 351.
 {¶ 74} Warner was indicted for receiving or retaining property belonging to Kimberly Warner, David Hofferbert and Bonnie Shipley. Regarding the first count of receiving stolen property, as against Kimberly, Warner asserts that the conviction was against the manifest weight of the evidence because no one testified that he stole the checks or saw him in possession of the checks.
 {¶ 75} At trial, Kimberly testified that when she awoke on August 6, 2002, there was approximately $200 in cash stolen from her purse. Kimberly testified that Warner had been at her house the evening prior to the theft. Later that month, checks belonging to Kimberly were discovered in Warner's locked box which Runyon had brought to Det. Cyr. She identified the handwriting on the check as belonging to her brother, Warner. As we stated in the previous assignment of error, Warner's signature on the checks is evidence that he exerted dominion and control over the checks. Accordingly, we find that the State presented substantial evidence upon which the jury could reasonably conclude that all the elements of receiving stolen property, that is, checks belonging to Kimberly, have been proven beyond a reasonable doubt.
 {¶ 76} In the second portion of this assignment of error, Warner contends that his conviction for receiving stolen property, namely Hofferbert's checks, was against the manifest weight of the evidence.
 {¶ 77} We find that the record reveals substantial evidence supporting this conviction. Hofferbert testified that he had contacted the Fairborn police department when he realized his DVD player had been stolen. Warner had been at Hofferbert's house within several days of the theft. After contacting Det. Cyr, the DVD player was recovered, however Hofferbert learned that two of his checkbooks had been removed from his house. Several of the checks were missing and Hofferbert eventually discovered that the checks had been cashed at Check Smart and at a bank. Furthermore, Hofferbert testified that he had never given Warner permission to have possession of his checks.
 {¶ 78} Runyon testified that in August of 2002, Warner approached Runyon and asked him to come with him to cash some checks. Warner drove Runyon to Check Smart, where he explained that Hofferbert had owed him money, and that it was "okay to cash" Hofferbert's check. Warner instructed Runyon to sign the back of the check and show his identification. Runyon, who has a very low I.Q., did as he was instructed. He cashed the check and gave the money to Warner.
 {¶ 79} Mary Runyon, Runyon's mother, also stated that Warner had asked her to take him to her bank to cash a check. Mary Runyon stated that Warner drove her to her bank, wrote something on a check, and told her to hand it to the teller. The teller handed her one hundred dollars, which she gave to Warner. Warner explained that he had needed the money for diapers and food for his child. Later, the bank contacted Mary Runyon's daughter, Luis, because this check, drawn on Hofferbert's account, had bounced.
 {¶ 80} Runyon testified that at some point Warner came to him with a canvas bag and a locked box and asked Runyon to keep it. Runyon understood that something "shady" was occurring, but agreed to keep the bag and the box for Warner. Warner would come over to Runyon's home on a daily basis and delve into the bag and the box. Runyon could see different I.D.'s and checks, including those belonging to Kimberly Warner and Hofferbert, but he never questioned Warner.
 {¶ 81} Based upon the above-mentioned facts in the record, we find substantial evidence to support the guilty verdict for the second count of receiving stolen property.
 {¶ 82} The final issue Warner raises in this assignment of error is that the third conviction of receiving stolen property as against Bonnie Shipley was against the manifest weight of the evidence.
 {¶ 83} We see no miscarriage of justice in this matter. Again, the State presented irrefutable evidence that Shipley was awakened on August 25, 2002 at approximately 7 a.m., by the familiar sound of Warner's loud muffler. Shipley noticed that her purse, which had been on the ground next to the couch on which she had fallen asleep, was missing. Shipley's neighbor, Keith Wooster, testified that at the same time he had heard the familiar sound of Warner's car outside his home, and upon looking out his window he saw Warner's car parked in Shipley's driveway.
 {¶ 84} Shipley's purse, including the credit card at issue, was located in the canvas bag that Runyon had brought to Det. Cyr. Runyon testified at trial that the bag belonged to Warner. Furthermore, Shipley testified that she did not give permission to Warner to take her purse or her credit cards.
 {¶ 85} Accordingly, this conviction was supported by substantial evidence in the record. The convictions are not against the manifest weight of the evidence.
 {¶ 86} Warner's seventh assignment of error is without merit.
 {¶ 87} The judgment of the trial court is affirmed.
Fain, P.J. and Grady, J., concur.
[1] To avoid confusion, we will refer to Kimberly Warner as "Kimberly" and Steve Warner as simply "Warner."