OPINION
{¶ 1} Defendant-Appellant, Kenneth D. Davis, appeals from his conviction and sentence for Robbery, following a jury trial.
 {¶ 2} On June 30, 2003, Matt Siney, a loss prevention officer at Elder Beerman's, observed on a security camera a vehicle pull up to an entrance of Elder Beerman's and a man exit the passenger side of the vehicle. Siney told Todd Pultz, the loss prevention manager at Elder Beerman's, that he should make his way outside because he believed there was going to be a "grab and run." The man entered Elder Beerman's and pulled out a white Elder Beerman's bag, which he filled with clothes piled under a clothing rack. The man made his way toward the exit with the bag. Pultz was outside of the store and had told the driver of the car that he needed to leave. The car drove off. Pultz scuffled with the man at the entrance of the store, and the man's shirt was ripped off of him. Pultz began to chase the man and then realized he was bleeding from his eye. Pultz then saw the car slowly return and witnessed the man dive into the passenger window. Pultz then called the police.
 {¶ 3} Police Officer Shena Dine of the Dayton Police Department arrived to the scene and first noticed that Pultz needed medical attention. Pultz was bleeding from the eye and had blood-soaked towels on it. Officer Dine made sure Pultz was medically treated. Officer Dine viewed the videotape and obtained the license plate to the suspect vehicle. Officer Dine determined that the registered owner of the vehicle was Charles Davis, Kenneth Davis's brother. Officer Dine then put out a broadcast with a description of the suspect and the suspect vehicle. Charles Davis and Kenneth Davis were later pulled over in the vehicle by the Trotwood Police Department.
 {¶ 4} Detective Jennifer Godsey of the Dayton Police Department met with Pultz and Siney individually. Detective Godsey observed that Pultz had an injury above his left eye with stitches and took a picture of it. Pultz and Siney both immediately identified Davis when they were shown a photo spread by Detective Godsey containing Davis and five other persons matching his description.
 {¶ 5} Detective Godsey also interviewed Davis and stated that the interview began with him saying he didn't steal anything from "that store," and that he knew that he was being interviewed about the incident at Elder Beerman's. Davis then indicated to Detective Godsey that he had gone to Elder Beerman's on June 30 with the intent to steal items from the store. Davis stated that earlier in the day, someone had placed the items he was to steal in the children's area. Davis stated that he took a white Elder Beerman's bag into the store and bagged the items up, intending to steal them. Davis stated that when he started to walk towards the door in Elder Beerman's, he got scared and threw the bag because he saw a security truck outside the entry door, which he figured was there for him. Davis stated that as he was going out the door, Pultz approached him and growled at him. Davis indicated that he was fighting Pultz because he was scared and felt like he was being attacked. Davis said that he was not resisting Pultz but struggling with him to get away. Davis stated that he bent down to get out of his shirt in the struggle, and that he must have hit Pultz with his tooth which is what cut his eye. Davis confessed that he intended to steal the clothes to sell them for crack.
 {¶ 6} Davis was subsequently arrested and charged with one count of Robbery (use of force), in violation of R.C. 2911.02(A)(2) and a felony of the third degree. After a jury trial, Davis was found guilty of Robbery and was sentenced to four years of imprisonment.
 {¶ 7} Davis raises the following two assignments of error:
 {¶ 8} "The trial court erred by failing to consider the statutory guidance of O.R.C. 2929.11 and 2929.12.
 {¶ 9} "Appellant asserts ineffective assistance of counsel[.]"
 {¶ 10} Davis's First Assignment of Error:
 {¶ 11} Davis contends that the trial court erred in sentencing him to four years of imprisonment, because the trial court failed to consider R.C. 2929.11 and R.C. 2929.12.
 {¶ 12} R.C. 2929.11(A) provides that "[a] court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both."
 {¶ 13} R.C. 2929.12 states, in pertinent part, as follows:
 {¶ 14} "(B) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is more serious than conduct normally constituting the offense:
 {¶ 15} "(1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.
 {¶ 16} "(2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.
 {¶ 17} "(3) The offender held a public office or position of trust in the community, and the offense related to that office or position.
 {¶ 18} "(4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.
 {¶ 19} "(5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.
 {¶ 20} "(6) The offender's relationship with the victim facilitated the offense.
 {¶ 21} "(7) The offender committed the offense for hire or as a part of an organized criminal activity.
 {¶ 22} "(8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion.
 {¶ 23} "(9) If the offense is a violation of section 2919.25 or a violation of section 2903.11, 2903.12, or 2903.13 of the Revised Code involving a person who was a family or household member at the time of the violation, the offender committed the offense in the vicinity of one or more children who are not victims of the offense, and the offender or the victim of the offense is a parent, guardian, custodian, or person in loco parentis of one or more of those children."
 {¶ 24} "(C) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is less serious than conduct normally constituting the offense:
 {¶ 25} "(1) The victim induced or facilitated the offense.
 {¶ 26} "(2) In committing the offense, the offender acted under strong provocation.
 {¶ 27} "(3) In committing the offense, the offender did not cause or expect to cause physical harm to any person or property.
 {¶ 28} "(4) There are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense."
 {¶ 29} At Davis's sentencing hearing, Davis apologized for what happened and confessed that he had a drug problem. The trial court stated as follows:
 {¶ 30} "I know you do, Mr. Davis, and it is clear that you have that problem that faces the Court with respect to sentencing in your case, obviously is that the victim of the offense was hurt in this case and that you have 16 prior felony offenses on your record.
 {¶ 31} "With those considerations, the Court finds that sentencing beyond a minimum sentence is appropriate. The Court will sentence you to a term of four years of confinement at the Ohio Department of Rehabilitation and Correction. * * *"
 {¶ 32} After reviewing the record of Davis's sentencing hearing, we conclude that the trial court properly considered the factors set forth in R.C. 2929.12, finding that a four year sentence of imprisonment was consistent with the purposes and principles of sentencing set forth in R.C. 2929.11. However, Davis specifically argues that the trial court erred in sentencing him to four years of imprisonment, in excess of the minimum one year sentence for Robbery, because it failed to make a finding that the shortest prison term would demean the seriousness of his conduct or would not adequately protect the public from future crime by him or others as required by R.C. 2929.14(B). Davis was convicted of Robbery, a felony of the third degree. The prison term for a felony of the third degree is one, two, three, four, or five years. R.C.2929.14(A)(3). Davis was sentenced to a four year term of imprisonment.
 {¶ 33} R.C. 2929.14(B) provides that "[e]xcept as provided in division (C), (D)(1), (D)(2), (D)(3), (D)(5), (D)(6), or (G) of this section, in section 2907.02 of the Revised Code, or in Chapter 2925. of the Revised Code, if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:
 {¶ 34} "(1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term.
 {¶ 35} "(2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
 {¶ 36} Because the record shows that Davis has previously served a prison term, the trial court was not required to impose the shortest prison term authorized for Robbery pursuant to R.C. 2929.14(B)(1). Because R.C. 2929.14(B)(1) is applicable, the trial court was also not required to make the findings required under R.C. 2929.14(B)(2) as argued by Davis.
 {¶ 37} Davis also argues that the trial court erred in sentencing him to four years of imprisonment, because it failed to make a finding that he posed a great likelihood of committing future crimes as required by R.C. 2929.14(C).
 {¶ 38} R.C. 2929.14(C) provides that "[e]xcept as provided in division (G) of this section or in Chapter 2925. of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section."
 {¶ 39} In this case, the trial court did not impose the "longest prison term" authorized for the offense of Robbery, because it imposed a prison term of four years not five years. Therefore, R.C. 2929.14(C) is also not applicable.
 {¶ 40} We conclude that the trial court did not err in sentencing Davis to four years of imprisonment. Accordingly, Davis's First Assignment of Error is overruled.
 {¶ 41} Davis's Second Assignment of Error:
 {¶ 42} Davis contends that he was denied effective assistance of counsel because his counsel failed to make any objections during his jury trial; to make any pre-trial motions; to view the videotapes from the security cameras prior to his trial; and to request a lesser included offense in the jury instructions.
 {¶ 43} We evaluate claims of ineffective assistance of counsel under the two-part test provided in Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. "In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's representation fell below an objective standard of reasonableness and that, but for counsel's errors, the result of the proceeding would have been different." State v. Stevens, Montgomery App. No. 19572, 2003-Ohio-6249, at ¶ 33, citing Strickland, supra; State v.Bradley (1989), 42 Ohio St.3d 136, 142, 538 N.E.2d 373.
 {¶ 44} Davis first contends that he was denied effective assistance of counsel because his counsel failed to make any objections during his jury trial. Davis does not demonstrate where and when counsel should have objected during the trial. Davis also does not demonstrate how counsel's failure to object prejudiced him. Therefore, Davis has failed to show that counsel's representation fell below an objective standard of reasonableness and that, but for counsel's errors, the result of the proceeding would have been different.
 {¶ 45} Davis next contends that he was denied effective assistance of counsel because his counsel failed to file any pre-trial motions. Davis also contends that his counsel was not available to discuss his case and failed to advise him of the status of his case. We first note that Davis's assertions contain matters outside of the record before us and therefore, are outside of the realm of our consideration. The record does show that counsel failed to make any pre-trial motions. However, Davis has failed to show how counsel's failure to file any pretrial motions prejudiced him. Based on the overwhelming evidence of Davis's guilt, we find that even if counsel erred, the result of the trial would not have been different.
 {¶ 46} Davis also contends that he was denied effective assistance of counsel because his counsel failed to view the store videotapes prior to his trial and agreed to admit the videotapes into evidence even when Davis informed his counsel that the videotapes were altered. Although the record does not show whether Davis's counsel actually viewed the videotapes prior to trial, the record does show that prior to Davis's trial, Davis's counsel filed a motion for continuance on the basis that plea negotiations were in progress and that he needed to view the videotapes of the incident. There was no evidence presented to indicate that the videotapes were altered, and Pultz testified that the tapes were an accurate copy of the two original tapes from June 30, 2003.
 {¶ 47} Davis contends that he was denied effective assistance of counsel because his counsel failed to request a lesser included offense of Theft in the jury instructions. Counsel's failure to request the lesser included offense in the jury instructions may have been a trial strategy to seek an outright acquittal of the Robbery charge for Davis. Although defense counsel conceded that Davis committed a theft offense, he contested whether Davis used force in committing the theft offense. In defense counsel's opening statement, he conceded that "Davis did embark on that day to steal." However, defense counsel went on to state the following:
 {¶ 48} "But the problem with it is I'll argue with you at the end of this trial is that Mr. Davis didn't use force. He didn't threaten force.
 {¶ 49} "* * *
 {¶ 50} "* * * [W]e're stretching here to get to a robbery. We're not here to condone Mr. Davis in his conduct. We're just saying, we didn't charge him correctly."
 {¶ 51} Based on defense counsel's opening statement, defense counsel conceded that Davis intended to steal, but contended that Davis did not use force. Had defense counsel's trial strategy been successful and the jury found that Davis did not use force, Davis would have been acquitted of the Robbery charge. Even if counsel's failure to request a lesser included offense was not a trial strategy, Davis has failed to show that even if counsel erred, the result of the trial would not have been different, given the overwhelming evidence of Davis's guilt.
 {¶ 52} The record is replete with overwhelming evidence of Davis's guilt in committing the offense of Robbery. R.C. 2911.02(A)(2), Robbery, provides that, "[n]o person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * [i]nflict, attempt to inflict, or threaten to inflict physical harm on another[.]"
 {¶ 53} The videotapes from the security cameras show that a car pulled up to the store doors, and Davis exited the passenger side of the car. It shows that Davis entered the store and filled a white Elder Beerman plastic bag with clothes piled under a clothing rack. The videotape shows Davis heading towards the exit with the bag, but then throwing the bag back inside when Pultz appears at the store door. The videotape shows Pultz and Davis scuffle and Davis's shirt being pulled off during the scuffle.
 {¶ 54} Witness testimony confirms the sequence of events shown on the videotape. Pultz testified that on June 30, he and Siney were in the loss prevention office when Siney noticed on one of their security cameras a car pull up in front of the store doors and told Pultz to make his way down there because he believed there was going to be a "grab and run." Pultz testified that he exited the store from a different set of doors, two doors from where Davis was going to exit the store. He testified that he scuffled with Davis at the door Davis exited, and that Davis's shirt was ripped off of him. Pultz testified that he realized he was bleeding from his eye when he began to chase Davis. Officer Dine testified that when she arrived to the scene, she first noticed that Pultz needed medical attention. Pultz was bleeding from the eye and had blood-soaked towels on it. Officer Dine testified that she viewed the videotape and obtained the license plate to the vehicle driven. She testified that the registered owner of the vehicle came back as Charles Davis, Kenneth Davis's brother. Charles and Kenneth were later pulled over in the vehicle by the Trotwood Police Department.
 {¶ 55} Detective Godsey testified that when she met with Pultz, he had an injury above his left eye with stitches. She testified that she took a picture of Pultz's injury, which was submitted to the jury. Detective Godsey testified that Pultz and Siney both immediately identified Davis when they were shown a photo spread containing Davis and five other persons matching his description.
 {¶ 56} Detective Godsey also testified that when she interviewed Davis, he first said that he didn't steal anything from "that store," and that he knew that he was being interviewed about the incident at Elder Beerman's. Detective Godsey testified that Davis then "indicated that on the day of the incident, June 30th 2003, he had gone to the Elder Beerman's to steal the items. He had intentions of stealing the items that he had bagged up. He started to walk towards the door and he said he got scared and threw the bag because he saw a security truck outside the entry door, which he figured was there for him." Detective Godsey then testified that Davis indicated that earlier in the day, someone had placed the items he was to steal in the children's area. She testified that Davis then indicated that he took a white Elder Beerman's bag into the store and bagged the items up, intending to steal them. Detective Godsey testified that Davis stated that "as he was going out the door, Todd Pultz approached him and didn't say anything. He felt that he was being attacked. He said that Todd Pultz growled at him and he verbalized the growl." Detective Godsey testified that Davis indicated that he was fighting Pultz because he was scared and felt like he was being attacked. She testified that Davis said that he was not resisting Pultz but struggling with him to get away. Detective Godsey testified that Davis stated that he "never intentionally hit him or struck him but he, as he bent down to get out of his shirt in the struggle, he must have hit Todd with his tooth which is what cut his eye." She testified that Davis confessed that he intended to steal the clothes to sell them for crack.
 {¶ 57} Based on the above, we find that there is overwhelming evidence that Davis, in fleeing immediately after attempting or committing a theft offense, inflicted physical harm on Pultz. We conclude that given the overwhelming evidence of Davis's guilt, even if counsel erred, the result of the trial would not have been different. We conclude that Davis was not denied effective assistance of counsel. Accordingly, Davis's Second Assignment of Error is overruled.
 {¶ 58} Both of Davis's assignments of error having been overruled, the judgment of the trial court is Affirmed.
Brogan, P.J., and Donovan, J., concur.
(Hon. Frederick N. Young, Retired from the Court of Appeals, Second Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio)