[Cite as *State v. Wiredu*, 2021-Ohio-1846.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
HURON COUNTY

State of Ohio/City of Norwalk                           Court of Appeals No. H-20-005

      Appellee                                         Trial Court No. TRC 1905988 A

v.

 Kwaku Wiredu                                        **DECISION AND JUDGMENT**

      Appellant                                        Decided:  May 28, 2021

* * * * *

G. Stuart O'Hara, Jr., Law Director, and Scott M. Christophel,
Assistant Law Director, for appellee.

Zachary E. Dusza, for appellant.

* * * * *

**DUHART, J.**

{¶ 1} This case is before the court on appeal by appellant, Kwaku Wiredu, from the

January 24, 2020 judgment of the Norwalk Municipal Court.  For the reasons that follow,

we affirm.

## Assignments of Error

1. Defendant-Appellant was deprived of his right to a fair trial because of the prosecutor's misconduct in inappropriately vouching for the quality of admitted evidence.

2. Defendant-Appellant's conviction was against the manifest weight of the evidence.

## Background

{¶ 2} In the early morning on September 1, 2019, Sergeant James Montana, of the Norwalk police department, was driving southbound on Benedict Avenue in the city of Norwalk when he saw a vehicle approaching him that "appeared to swerve toward the centerline." This action drew Sergeant Montana's attention, so he began to follow the vehicle. The vehicle was driving at or below the speed limit. At some point, Sergeant Montana lost sight of the vehicle for a short time, but eventually located the vehicle and continued to follow it. The sergeant noticed the vehicle weave inside its lane, and drive over the lane lines on two occasions. There were no other problems with the way the vehicle was being driven that would indicate an impaired driver. Sergeant Montana then activated his emergency lights and stopped the vehicle.

{¶ 3} The vehicle pulled over appropriately and in a reasonable amount of time. Appellant was the driver and sole occupant of the vehicle. During his initial contact with appellant, Sergeant Montana noticed appellant's eyes were glassy and he could smell the

2.

odor of an alcoholic beverage on appellant's breath, although appellant denied he had been drinking any alcohol.

{¶ 4} Sergeant Montana asked appellant to step out of the vehicle. Appellant got out of the vehicle and walked over to the sidewalk, as he was requested, without exhibiting any other indicators of intoxication. The sergeant checked appellant's eyes and conducted the horizontal gaze nystagmus test. Sergeant Montana observed six out of six clues when he conducted the horizontal gaze nystagmus test. He did not notice any vertical nystagmus.

{¶ 5} After completing these tests, Sergeant Montana asked appellant if he would consider taking any other field sobriety tests. Appellant initially did not consent. The sergeant informed appellant he was under arrest.[1] When other officers attempted to place handcuffs on appellant, he "tensed up his arms." Sergeant Montana placed his Taser on appellant and told appellant to put his hands behind his back. Appellant complied.

{¶ 6} Once appellant was arrested, he was given the option of allowing a police officer to move his vehicle off the street and into a nearby parking lot or have it towed. Appellant refused to give permission for an officer to move the vehicle, so it was towed. In an inventory search of the vehicle, a partially consumed bottle of vodka was found in the backseat of the vehicle behind the passenger seat.

---

[1] After appellant was informed he was under arrest, he offered to do the field sobriety tests. However, Sergeant Montana no longer thought it would be appropriate.

3.

{¶ 7} Appellant was then taken to the police station. While at the station, appellant was read a Bureau of Motor Vehicle form describing the consequences of taking and/or refusing to take a breath test. During this period, according to Sergeant Montana's later testimony, appellant "made some statements that he felt he was okay to drive, that he made a mistake. That he had been drinking but he thought he was okay to drive."

{¶ 8} Appellant agreed to take a breath test. Appellant was tested with a BAC DataMaster breath testing machine and was found to have a .212 grams by weight of alcohol for 210 liters of breath. Sergeant Montana had received training on the use of the machine and believed that it was in proper working order at the time of the test.

{¶ 9} Appellant was subsequently charged with operating a motor vehicle while under the influence of alcohol, in violation of R.C. 4511.19(A)(1)(a) and operating a motor vehicle with a prohibited breath alcohol concentration, in violation of R.C. 4511.19(A)(1)(h).

{¶ 10} A trial to a jury was held on November 8, 2019. Sergeant Montana was the only witness to testify. Additionally, the jury was shown a video of appellant in the police station during the period in which Sergeant Montana read appellant the Bureau of Motor Vehicle form and conducted the breath test.

{¶ 11} During closing arguments, appellant's attorney made statements regarding the breath testing machine and whether the number it "spit out" was right or wrong. He

4.

then made additional comments regarding the accuracy of the machine, including the following.

> Did you ever hear any testimony today that says that the machine was ever checked for accuracy? Was it ever zeroed? I mean, you got the little scales in the kitchen and you're doing your Weight Watcher thing, and the first thing you do is you put the scale up and what do you do? Zero it. You put something on it to set the tier so it's zero. Do they ever do any of that with this machine or does it just sit there? Is it ever maintained? Has it ever been cleaned?
>
> * * *
>
> I don't suppose any one of you want to go home tonight and lay down in your bed and say, "My God. I don't know if they've ever done anything with that machine or whether it's right or not. I don't know. I have a question." That question is called "reasonable doubt."

{¶ 12} After appellant's attorney made these statements, the prosecutor, in his rebuttal closing argument, said that "there is no evidence that the machine malfunctioned" and that "the State of Ohio is not going to allow a breath testing machine to be used if it's going to be unreliable and malfunction." Appellant's attorney objected to the latter comment, and the court allowed the statement, noting that it was "the exact flipside of the argument [appellant's attorney] used."

{¶ 13} The jury returned a verdict of guilty to the charge of operating a motor vehicle with a prohibited breath alcohol concentration, in violation of R.C. 4511.19(A)(1)(h), and not guilty to the charge of operating a motor vehicle while under the influence of alcohol, in violation of R.C. 4511.19(A)(1)(a).

{¶ 14} On January 24, 2020, appellant was sentenced to a fine of $750, court costs, and a 90-day jail term, with 80 days suspended. Appellant was then placed on probation for a period of two years with conditions.

{¶ 15} Appellant timely appealed.

### Prosecutorial Misconduct Claim

{¶ 16} In his first assignment of error, appellant argues he was deprived of his right to a fair trial as a result of the prosecutor inappropriately vouching for the reliability of the breath testing machine.

{¶ 17} When determining whether prosecutorial misconduct occurred in closing arguments, the test "is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the [appellant]." *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). When considering such claims, "our focus is on 'the fairness of the trial, not the culpability of the prosecutor.'" *State v. Cantrill*, 6th Dist. Lucas No. L-18-1047, 2020-Ohio-1235, ¶ 43, quoting *State v. Talley*, 2016-Ohio-8010, 74 N.E.3d 868, ¶ 33 (6th Dist.). "Thus, prosecutorial misconduct is not grounds for reversal unless the [appellant] has been denied a fair trial." *State v. Haynes*, 6th Dist. Wood No. WD-19-035, 2020-Ohio-6977, ¶ 40.

6.

{¶ 18} Prosecutors are generally entitled to considerable latitude during opening and closing arguments. *State v. Boles*, 190 Ohio App.3d 431, 2010-Ohio-5503, 942 N.E.2d 417, ¶ 50 (6th Dist.), citing *State v. Ballew*, 76 Ohio St.3d 244, 667 N.E.2d 369 (1996). The prosecutor may "comment upon that which the evidence has shown and any reasonable inferences that can be drawn therefrom." *State v. Roundtree*, 6th Dist. Lucas No. L-14-1052, 2015-Ohio-2230, ¶ 33, citing *State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293 (1990). The prosecutor may not, however, "express a personal belief or opinion as to the credibility of a witness." *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, 836 N.E.2d 1173, ¶ 117. To vouch for a witness, "the prosecutor must imply knowledge of facts outside the record or place the prosecutor's personal credibility in issue." *Id.*

{¶ 19} Any allegedly improper statements made during closing must be considered in the context of the entire case when determining whether the statements resulted in actual prejudice to the appellant. *Roundtree* at ¶ 33, citing *State v. Lorraine*, 66 Ohio St.3d 414, 613 N.E.2d 212 (1993). Isolated incidents of misconduct on the part of the prosecutor are considered harmless, and the closing argument must be viewed in its entirety when determining whether appellant was prejudiced. *State v. Norales-Martinez*, 6th Dist. Wood No. WD-17-041, 2018-Ohio-4356, ¶ 44.

{¶ 20} Appellant argues that the prosecutor's assertions that there is no evidence that the machine malfunctioned and that "the State of Ohio is not going to allow a breath

7.

testing machine to be used if it's going to be unreliable and malfunction" were prejudicial and not supported by the evidence.

{¶ 21} We first consider whether these statements were improper. Appellant maintains that these statements were improper vouching and not supported by the record. The state disputes this, and further contends that even if the statements were otherwise improper, appellant "opened the door" by his attorney's comments in closing argument regarding the lack of evidence of the accuracy of the machine or whether it had been maintained.

{¶ 22} We do not find these statements to be improper. With regard to the prosecutor's statements that there was no evidence that the machine had malfunctioned, we find this to be supported by the evidence. Sergeant Montana testified that he followed the operational checklist for the test, that he conducted the breath test "according to [his] training and experience," and that he believed "the machine was in proper working condition at the time of the test." There was no specific evidence to the contrary in the record.

{¶ 23} As to the prosecutor's statement that "the State of Ohio is not going to allow a breath testing machine to be used if it's going to be unreliable and malfunction," we do not find this to be improper vouching. The prosecutor was not expressing "a personal belief or opinion as to the credibility of a witness." *Jackson* at ¶ 117. Furthermore, given the latitude afforded to the prosecutor during closing arguments, we do not find this statement to be otherwise improper. The state has approved the BAC

8.

DataMaster for use as an evidential breath testing instrument to determine whether a person's breath contains a prohibited concentration of alcohol under R.C. 4511.19. Ohio Adm.Code 3701-53-02(A)(1). Based on this approval, it is presumed that the machine is reliable. *State v. Rouse*, 2012-Ohio-5584, 983 N.E.2d 845, ¶ 30, 35 (11th Dist.). *See also State v. Vega*, 12 Ohio St.3d 185, 188, 465 N.E.2d 1303 (1984), quoting *State v. Brockway*, 2 Ohio App.3d 227, 232, 441 N.E.2d 602 (4th Dist.1981) ("'[The judiciary must recognize] the necessary legislative determination that breath tests, properly conducted, are reliable * * *.'").

{¶ 24} Moreover, "[c]omments made by defense counsel in closing arguments can open the door to a response in the prosecutor's rebuttal argument." *State v. DeJarnette*, 8th Dist. Cuyahoga No. 96553, 2011-Ohio-5672, ¶ 40. We find defense counsel's statements regarding the lack of evidence regarding the accuracy of the machine "opened the door" to the comments made by the prosecutor. Appellant's first assignment of error is found not well-taken.

**Manifest Weight Claim**

{¶ 25} In his second assignment of error, appellant asserts that his conviction was against the manifest weight of the evidence.

{¶ 26} When considering whether a conviction was against the manifest weight of the evidence, an appellate court "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a

9.

manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). The reviewing court sits "as a 'thirteenth juror' and may disagree with the fact-finder's resolution of the conflicting testimony." *State v. Stein*, 6th Dist. Lucas No. L-19-1171, 2021-Ohio-761, ¶ 34, citing *Thompkins* at 387.

{¶ 27} Appellant was convicted of violating R.C. 4511.19(A)(1)(h), which prohibits the operation of a vehicle by a person with "a concentration of seventeen-hundredths of one gram or more by weight of alcohol per two hundred ten liters of the person's breath."

{¶ 28} Appellant contends that the jury incorrectly considered the statements made by the prosecutor during closing. There is no evidence that the jury considered these statements as evidence. The jury was instructed that closing arguments of counsel are not evidence and it is presumed that the jury followed this instruction. *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶ 194, quoting *State v. Murphy*, 65 Ohio St.3d 554, 584, 605 N.E.2d 884 (1992).[2]

---

[2] Appellant argued that the general instruction was not sufficient, citing to *Smith*, 14 Ohio St.3d at 15, 470 N.E.2d 883. *Smith* is distinguishable from the instant case as in *Smith*, the court found "flagrant misconduct" on the part of the prosecutor. We have not found any such misconduct in this case.

10.

{¶ 29} In addition, appellant has argued that the state solely relied upon the BAC DataMaster results as evidence, but that there was no evidence that the machine was reliable when appellant's breath was tested. As previously discussed, Sergeant Montana testified to the reliability of the test. Moreover, the Ohio Department of Health has approved the BAC DataMaster as an evidential breath-testing instrument and thus, it is presumed to be reliable. *Rouse*, 2012-Ohio-5584, 983 N.E.2d 845 at ¶ 30, 35; Ohio Adm.Code 3701-53-02(A)(1).

{¶ 30} Upon our review of the record, we do not find this to be an exceptional case in which the evidence weighs heavily against conviction. The results of the breath test showed that appellant had a concentration of .212 grams by weight of alcohol per 210 liters of breath. Additionally, there were other indicators of intoxication testified to by Sergeant Montana. Therefore, we find appellant's conviction is supported by some competent, credible evidence and is not against the manifest weight of the evidence. Appellant's second assignment of error is found not well-taken.

{¶ 31} The judgment of the Norwalk Municipal Court is affirmed. Pursuant to App.R. 24, appellant is hereby ordered to pay the costs incurred on appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.
_____
JUDGE

Gene A. Zmuda, P.J.

Myron C. Duhart, J.                              _____
CONCUR.                                                        JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.